IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **ILLINOIS UNION INSURANCE COMPANY** | **PLAINTIFF** |
| v. | CAUSE NO. 1:19-cv-365-LG-RPM |
| **HEIL BUILDERS, INC. d/b/a MODU-TECH, et al.** | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the [38] Motion for Summary Judgment filed by Defendant, Heil Builders, Inc. d/b/a Modu-Tech ("Modu-Tech"). Plaintiff, Illinois Union Insurance Company ("Illinois Union"), has filed a [57] Response in Opposition, to which Defendant has [69] replied. Plaintiff filed a [72] Sur-Reply, and Defendant a [74] Rejoinder. After due consideration, the Court finds that the Motion should be denied.

### BACKGROUND

This lawsuit concerns the construction of over one thousand residential structures near Keesler Air Force Base in Biloxi, Mississippi. The United States Air Force (USAF) awarded Hunt Building Co. Ltd. ("Hunt") a construction contract for the project. (Compl., ¶ 10, ECF No. 1-2; Prime Contract, ECF No. 58-2). Hunt and W.G. Yates & Sons Construction Co. ("Yates"), had together formed a third company, aptly named Hunt Yates, LLC ("Hunt Yates"), for the purpose of performing the construction work. (*Id.* ¶ 11). Hunt Yates, LLC is governed by an

Operating Agreement which reflects 50/50% ownership between Hunt and Yates. (Ex. A to Operating Agmt., ECF No. 58-1).

Hunt entered into a formal agreement with Hunt Yates to perform the construction work. (Compl., ¶ 12, ECF No. 1-2; Hunt-Hunt Yates Subcontract, ECF No. 58-3). Thereafter, Hunt Yates itself subcontracted with two companies, Ark-la-Tex Cos., Inc. ("Ark-la-Tex") and Defendant Modu-Tech, for HVAC and carpentry work respectively. (Compl., ¶¶ 12-13, ECF No. 1-2; Subcontract, ECF No. 58-4). The project was finished, and USAF assigned its guarantees and warranties under the Prime Contract to Forest City Southern Group, LLC, which took ownership of the units. (Compl., ¶¶ 14-15, ECF No. 1-2).

In 2015, Forest City initiated litigation concerning the "water infiltration and indoor air quality" of the units, alleging that Hunt, Yates, and Hunt Yates were responsible for defective design and construction. (*See generally* Compl. in *Forest City S. Grp., LLC v. Hunt Bldg Co., Ltd., et al.*, ECF No. 38-1). Hunt moved to dismiss, arguing that Forest City's causes of action were limited to the express warranties of USAF's contract, which had expired before Forest City filed suit. (*See generally* Mot. Dismiss by Def. Hunt Bldg. Co., Ltd., & Supp. Mem. Law, ECF No. 38-3).[1] On February 15, 2016, the state court dismissed Hunt Yates and Yates, who

---

[1] Modu-Tech also references Hunt's rebuttal brief in the *Forest City* lawsuit, but it attached the rebuttal brief of codefendants Hunt Yates and Yates. (*See* Def.'s Mem. Supp. Mot. Summ. J., 3, ECF No. 39; Rebuttal Br. of Hunt Yates & Yates Supp. Mot. Dismiss, ECF No. 38-4).

2

had also moved for dismissal, on the grounds that they were not parties to the Prime Contract between Hunt and the USAF and could not be sued by Forest City as the USAF's assignee. (*See* Order, 1-3, ECF No. 38-6). The Court did not dismiss Hunt or act on its Motion. (*Id.*).

Forest City and Hunt settled on February 22, 2016. (Settlement Agmt. & Release, 1, ECF No. 42). The settlement agreement observed that "the Defendant has denied, and continues to deny responsibility for the Dispute and the allegations in the Lawsuit" and explained that the parties were settling "solely to avoid the burden, expense and distraction of further litigation between them." (*Id.*). Hunt Yates then assigned to Hunt "any and all rights, claims, and causes of action that Hunt Yates has or may have against . . . Modu-Tech, Heil Builders, Inc. . . . as it relates to such entity's respective subcontract with Hunt Yates . . ." and "expressly authorizes Hunt Building, and its insurer Chubb, to pursue any and all claims Hunt Yates has or may have against . . . Modu-Tech, Heil Builders, Inc. . . . as it relates to such entity's respective subcontract with Hunt Yates for the work performed at Keesler Airforce Base in Biloxi, Mississippi." (Assignment, 1, ECF No. 58-7; Compl., ¶ 24, ECF No. 1-2).

Thereafter, Hunt demanded indemnity from Modu-Tech for its settlement payment pursuant to an indemnification clause in the subcontract between Modu-Tech and Hunt Yates. (Letter of June 13, 2016, ECF No. 58-8). Specifically, the indemnification clause provided:

3

> 11.0 TO THE FULLEST EXTENT PERMITTED BY LAW, THE SUBCONTRACTOR COVENANTS TO DEFEND, INDEMNIFY, HOLD HARMLESS, PROTECT, AND EXONERATE BOTH THE CONTRACTOR [Hunt Yates] AND ITS AFFILIATES [and] AGENTS . . . JOINTLY AND SEVERALLY, FROM AND AGAINST ANY AND ALL LIABILITY, CLAIMS, DAMAGES, LOSSES, SUITS, ACTIONS, DEMANDS, . . .

(Subcontract, § 11.0, ECF No. 58-4) (emphasis omitted). Following a dispute, Chubb, Hunt's insurer and subrogee, sued Modu-Tech and Ark-la-Tex in state court, seeking to enforce the indemnification clause. (Compl., ECF No. 1-2).[2] Illinois Union was later substituted as Plaintiff. (Agreed Order Granting Mot. Substitute Illinois Union for Chubb, ECF No. 1-10). Modu-Tech removed the lawsuit to federal court. (Not. Removal, ECF No. 1).

At issue are all three of Plaintiff's claims against Modu-Tech. Plaintiff first claims the benefit of the indemnification provision of Modu-Tech's subcontract with Hunt Yates. (Compl., ¶¶ 27-31, ECF No. 1-2). Second is Plaintiff's breach of contract claim for Modu-Tech's alleged "fail[ure] to properly perform the work on the Project" and "fail[ure] to indemnify Hunt Yates as required by the Subcontracts." (*Id.* ¶¶ 32-37). Finally, Plaintiff seeks common law or equitable indemnity "as to the rights of Hunt Building based on its payment of certain sums of money to Hunt Building as a result of the settlement of the Forest City lawsuit and to protect [its] interests." (*Id.* ¶¶ 38-42). Defendant Modu-Tech has resisted all three claims in this extensively briefed Motion for Summary Judgment.

---

[2] Ark-la-Tex has since been dismissed from the litigation for Plaintiff Chubb's failure to serve process. (Order & J. Dismissal, ECF No. 1-8).

## DISCUSSION

I.     MOTION FOR SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

## II.   CONTRACTUAL INDEMNITY AND BREACH OF CONTRACT

Plaintiff's claim for contractual indemnity is predicated upon an indemnity agreement which obligated Defendant Modu-Tech, "[t]o the fullest extent permitted by law, . . . to defend, indemnify, hold harmless, protect, and exonerate both the Contractor and its affiliates [and] agents, . . . jointly and severally, from and against any and all liability, claims, damages, losses, suits, actions, demands . . ." (Subcontract, § 11.0, ECF No. 58-4) (emphasis omitted). "An obligation to indemnify may arise from a contractual relation." *Bush v. City of Laurel*, 215 So. 2d 256, 259 (Miss. 1968). Plaintiff invokes this provision as subrogee of Hunt.[3]

However, the extent to which Hunt benefits from this indemnification clause is in dispute. Hunt was not a party to the subcontract between Hunt Yates and Modu-Tech, nor is Hunt the named "Contractor." (Subcontract, 1, ECF No. 58-4). The parties have advanced two theories around this issue. First, Hunt was assigned "any and all rights, claims, and causes of action that Hunt Yates has or may have against . . . Modu-Tech . . . as it relates to such entity's respective subcontract with Hunt Yates." (Assignment, 1, ECF No. 58-7). Second, Hunt claims status as an affiliate or agent of Hunt Yates, which are also listed as indemnitees, by virtue of Hunt's membership in the Hunt Yates LLC. (*See*

---

[3] "[A] subrogated insurer stands in the shoes of its insured, and takes no rights other than those that the insured had, and is subject to all defenses which the third party tortfeasor might assert against the insured." *Miss. Farm Bureau Cas. Ins. Co. v. Orme*, 422 F. Supp. 2d 685, 687 (S.D. Miss. 2006) (quoting *Ind. Lumbermen's Mut. Ins. Co. v. Curtis Mathes Mfg. Co.*, 456 So.2d 750, 754 (Miss. 1984)).

Operating Agmt., ECF No. 58-1).

1.  **Hunt as Assignee of Hunt Yates**

Plaintiff's first theory is that Hunt acquired a claim to indemnity—as well as other claims for breach of contract—when Hunt Yates, LLC executed an assignment in favor of Hunt. In the document, Hunt Yates, LLC

> . . . assign[s], convey[s], and transfer[s] to Hunt Building Company, Ltd. . . . any and all rights, claims, and causes of action that Hunt Yates has or may have against . . . Modu-Tech, Heil Builders, Inc., and any and all of their parent companies, subsidiaries, and affiliates . . . as it relates to such entity's respective subcontract with Hunt Yates for the work performed at Keesler Airforce Base in Biloxi, Mississippi . . .
>
> Hunt Yates expressly authorize[s] Hunt Building, and its insurer Chubb,[4] to pursue any and all claims Hunt Yates has or may have against . . . Modu-Tech, Heil Builders, Inc., . . . as it relates to such entity's respective subcontract with Hunt Yates for the work performed at Keesler Airforce Base in Biloxi, Mississippi.

(Assignment, 1, ECF No. 58-7). Importantly, the Assignment was executed after Hunt Yates had already been dismissed from the *Forest City* litigation. (*See* Order, 1-3, ECF No. 38-6).

"Mississippi law permits an assignment of contractual rights." *Great S. Nat'l Bank v. McCullough Env't Servs., Inc.*, 595 So.2d 1282, 1287 (Miss. 1992). "'[I]n assignments of contracts between parties an assignee obtains no greater right in the thing assigned than was possessed by the assignor, but simply stands in the shoes of the latter[,] and the assignee's rights can rise no higher than the assignor[']s."

---

[4] As noted previously, Plaintiff Illinois Union has been substituted for Chubb. (*See* Agreed Order Granting Mot. Substitute Ill. Union for Chubb, 1, ECF No. 1-10).

7

*Stribling Inv., LLC v. Mike Rozier Constr. Co., Inc.*, 189 So.3d 1216, 1220 (Miss. 2016) (quoting *Ford v. White*, 495 So.2d 494, 497 (Miss. 1986)). A recent decision of the Mississippi Court of Appeals illustrates this principle. *Burkley v. U.S. Bank NA, Trustee for LSF9 Participation Trust*, --- So. 3d ---, 2020 WL 2125896 (Miss. Ct. App. May 5, 2020). There, a mortgage loan servicer sold the subject mortgage loan to the LSF9 Master Participation Trust. *Id.* at *2-3. Months later, the servicer assigned all its beneficial interest under the loan to U.S. Bank. *Id.* at *3. Because of the prior sale, however, the appellate court denied that the servicer "had any interest in the debt obligation" at the time of assignment; consequently, the assignor "could not assign legal rights that it did not own." *Id.* (citing *Stribling Inv. LLC*, 189 So. 3d at 1220 and *Neel v. Fannie Mae*, No. 1:12CV311-HSO-RHW, 2014 WL 896754, at *10 (S.D. Miss. Mar. 6, 2014)).

The same is true here. At the time of assignment, Hunt Yates had already been dismissed from the underlying *Forest City* lawsuit, the court finding that "[t]here [was] no connection between Forest City and Hunt Yates/Yates which gives rise to a cause of action." (*See* Order, 1-3, ECF No. 38-6). Hence, having been discharged, Hunt Yates had no real interest in the indemnity obligation or other contractual obligations at the time of assignment, as the court found that it was not liable to Forest City. Hunt cannot create liability between Defendant and Hunt Yates out of a vacuum and claim the benefits or its creation. Hence, Plaintiff's

8

breach of contract claims, to the extent that they are based on the Assignment,[5] must be dismissed. However, the claim will not be dismissed to the extent Hunt may independently invoke contractual indemnity, as discussed below.

### 2. Hunt as Agent or Affiliate of Hunt Yates

Plaintiff claims that Hunt is an "agent" or "affiliate" of Hunt Yates and may therefore recover indemnity under the contract independently of Hunt Yates. (*See* Subcontract, § 11.0, ECF No. 58-4 ("[T]he Subcontractor covenants to defend, indemnify, hold harmless, protect, and exonerate both the Contractor and its affiliates [and] agents.")). The Court cannot locate any pertinent definitions of these terms and must therefore resort to interpretation. "The interpretation of an unclear, ambiguous contract generally involves questions of fact which preclude the granting of summary judgment. However, where the contract is unambiguous the contract interpretation becomes a matter of law." *Jones v. Benefit Trust Life Ins. Co.*, 605 F. Supp. 179, 181 (S.D. Miss. 1985).

Mississippi follows "a three-tiered approach to contract interpretation." *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 283 (Miss. 2005) (quoting *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 351-53 (Miss. 1990)). The Court must first read "the language that the parties used in expressing their

---

[5] This includes Plaintiff's breach of contract claim based on Modu-Tech's alleged failure to properly perform work on the Project, as Plaintiff has not set forth a basis for invoking this contractual obligation outside of the Assignment. (Compl., ¶¶ 36-37, ECF No. 1-2).

agreement" within the four corners of the document. *Id.* "This so-called 'four corners' doctrine calls for construction through application of 'correct English definition and language usage.'" *Pursue Energy Corp.*, 558 So. 2d at 352. "[W]hen a word has a distinctive *legal* meaning," it is construed accordingly. *Id.* (citing *Knox v. Shell W. E & P, Inc.,* 531 So. 2d 1181, 1189 (Miss. 1988) (emphasis in original)). Second, if the four corners test fails, the Court should apply canons of contract construction; third, "if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence." *Tupelo Redevelopment Agency*, 913 So.2d at 284. "[I]t is a question of law for the court to determine whether a contract is ambiguous." *Id.* at 283.

Here, the word "agent" has a definite meaning within the law. The Revised Mississippi Limited Liability Company Act provides:

> (1) Except as provided in subsection (2) of this section, every member is an agent of the limited liability company for the purpose of conducting its business and affairs . . .
>
> (2) If the certificate of formation or operating agreement provides that management of the limited liability company is vested in a manager or managers then except as otherwise provided in the certificate of formation or the operating agreement:
>
>> (a) No member, acting solely in the capacity as a member, is an agent of the limited liability company; and
>>
>> (b) Every manager is an agent of the limited liability company for the purpose of its business and affairs . . .

Miss. Code Ann. § 79-29-307(1)-(2). In other words, agency depends on whether an LLC is either member-managed or manager-managed. *In re Northlake Dev., LLC*,

10

No. 06-01934-NPO, 2007 WL 4375226, at *5 (Bankr. S.D. Miss. Dec. 13, 2007). "Unless the members of a Mississippi LLC employ or appoint a manager to manage the LLC's business affairs, 'every member is an agent of the limited liability company for the purpose of conducting its business and affairs.'" *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 162 (Miss. 2011) (citing Miss. Code Ann. § 79-29-307(1)); *see also Heimer v. Knight*, No. 3:13CV115-TSL-JMR, 2013 WL 12209912, at *4 (S.D. Miss. May 16, 2013)). From the foregoing authorities, the Court concludes that, in a manager-managed LLC, the managers—not the members—are the agents of the company, unless the LLC's Operating Agreement provides otherwise.

"In Mississippi, 'an LLC operating agreement is a contract' and should be interpreted according to contract law." *Martindale v. Hortman Harlow Bassi Robinson & McDaniel PLLC*, 119 So. 3d 338, 341-42 (Miss. Ct. App. 2012) (quoting *Bluewater Logistics, LLC*, 55 So. 3d at 159). The Operating Agreement at issue creates a "Management Committee" consisting of one voting representative and one nonvoting representative from each of the members, Hunt and Yates. (Operating Agmt., § 1.09, ECF No. 58-1).[6] Hence, because Hunt Yates is manager-managed,

---

[6] The Operating Agreement also creates a "Project Manager" to be appointed by the Management Committee and names Hunt as "the initial Project Manager." (Operating Agmt., § 5.01(a), ECF No. 58-1). The Agreement seems to classify this position as an officer. (*Id.*). Officers also have some amount of agency authority under Mississippi law. *See* Miss. Code Ann. § 79-29-307(3). But the statute defines an officer as "an *individual* who is named in or selected or designated pursuant to, the certificate of formation or operating agreement," Miss. Code Ann. § 79-29-105(s)

11

Hunt is not an agent by virtue of its membership and must find some other grant of agency in the Operating Agreement. *See* Miss. Code Ann. § 79-29-307(2)(a); Miss. Code Ann. § 79-29-105(p). The Agreement specifically provides that "[n]o Member has the authority or power to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company." (Operating Agmt., § 5.01(c), ECF No. 58-1). But an earlier subsection declares that "[t]he Members shall have full, complete, and exclusive authority to manage and control the business, affairs, and properties of the Company, to make all decisions regarding those matters, and to perform any and all other acts or activities customary or incident to the management of the Company's business." (*Id.* § 5.01(a)). The two cited provisions are inconsistent on a four-corners reading. While one canon of construction teaches "that 'specific language controls over general inconsistent language in a contract,'" *Harris v. Harris*, 988 So.2d 376, 379 (Miss. 2008), the clauses seem to stand in direct contradiction on the same level of generality. Hence, there is a genuine issue of material fact as to whether Hunt was an agent of Hunt Yates, LLC, and summary judgment is inappropriate to resolve this ambiguity.

The word "affiliate" also exists in the Subcontract undefined. Here, the parties seem to agree that the definition of "affiliate" as contained in Hunt Yates,

---

(emphasis added), where an individual is a "natural person." *Id.* § 79-29-105(l). Hence, as a business entity, Hunt as Project Manager cannot be considered an "officer" agent of the LLC.

12

LLC's Operating Agreement governs the question of "affiliate" within the meaning of the indemnity clause. Neither party raises the issue of whether that definition is binding on the parties or whether it may be read into the indemnity agreement in the Subcontract. But because this is the only evidence either party has submitted on the issue of "affiliation," the Court finds this presents another issue of contract construction and may be considered.

> The Hunt Yates, LLC Operating Agreement provides:
>
> "Affiliate" means, when used with reference to a specified Person, any Person who directly or indirectly Controls, is Controlled by or is under common Control with the specified Person. 'Affiliate' shall also include (i) any Person which owns, directly or indirectly (including through one or more intermediaries), fifty percent (50%) or more of any class of voting security or equity interests of such specified Person, (ii) any Subsidiary of such specified Person and (iii) any Subsidiary of a Person defined in clause (i). Notwithstanding the foregoing however, the officers, directors, trustees and individuals in similar capacities with respect to any Person shall not be considered 'Affiliates' of such Person merely on account of such Person's status as an officer, director, trustee or other similar position or capacity; and further, a stockholder shall not be considered an 'Affiliate' merely on account of its status as a stockholder.

(Operating Agmt., § 1.09, ECF No. 58-1). Modu-Tech points to language that Hunt is not an affiliate "merely on account of its status as a stockholder." (*Id.*). However, the agreement classifies other persons who exercise control over Hunt Yates as "affiliates." The word "Control" is also defined in the agreement: "the possession, directly or indirectly, . . . of the power to direct or cause." (*Id.*). The Court has already found a genuine issue of material fact as to the authority of Hunt within

Hunt Yates, LLC.[7]  Hence, summary judgment is inappropriate on Plaintiff's claim for contractual indemnity.  While Plaintiff may not recover in subrogation to Hunt as the assignee of Hunt Yates, Plaintiff might be entitled to recovery in subrogation to Hunt as the "agent" or "affiliate" of Hunt Yates.

### III.   VOLUNTARY PAYMENT DOCTRINE

Next, Defendant resists both the contractual and common law indemnity claims through the voluntary payment doctrine.  Before proceeding, the Court must address the uncertainty raised by the parties as to the burden of proof.

The Mississippi Supreme Court has held that any contractual indemnity claim requires plaintiffs to "prove that (1) it was legally liable to an injured third party, (2) that it paid under compulsion, and that (3) the amount it paid was reasonable." *Certain Underwriters at Lloyd's of London v. Knostman*, 783 So. 2d 694, 698 (Miss. 2001); *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1216 (Miss. 2001); *see also Hopton Bldg. Maintenance, Inc. v. UPS, Inc.*, 559 So. 2d 1012, 1013 (Miss. 1990) (recognizing "the common law indemnity requisite that there must be legal liability before a claim of indemnity arises"); *Keys v. Rehab.*

---

[7] The result would not change were the Court without the Operating Agreement definition. Giving the terms in the Subcontract their prevailing legal meaning, an "affiliate" is "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate*, Black's Law Dictionary (11th ed. 2019); *see also* Miss. Code Ann. § 79-25-3(a) (defining, in a related area of Mississippi business law, that an "affiliate" is "a person that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, a specified person").  Again, the issue is one of control, and the Court finds a genuine issue of material fact therein.

14

*Ctrs., Inc.*, 574 So. 2d 579 (Miss. 1990) (holding that "an indemnitee must prove payment under compulsion and reasonableness before he may recover"). The Court infers from these statements that the onus is on Plaintiff to prove compulsion and antecedent legal liability.

Plaintiff, however, points to cases stating that "the voluntary payment doctrine is an affirmative defense" which must be pled and proved by Defendant. *See A1 Fire Sprinkler Contractors, LLC v. B.W. Sullivan Bldg. Contractor, Inc.*, 217 So.3d 731, 734-35 (Miss. Ct. App. 2017); *White v. White*, --- So.3d ---, 2019 WL 7876654, at *5 (Miss. Ct. App. May 21, 2019). The Court notes that these are decisions of lower courts, and that it must apply the law of the state as interpreted by the Supreme Court in a diversity case. *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998) (holding that "final decisions of the Mississippi Supreme Court are dispositive" in determining Mississippi substantive law). In the opinion of the Court, Plaintiff's indemnity claims are subject to Mississippi's "volunteer" or voluntary payment doctrine.

A payment is voluntary where it is made "without an *immediate and urgent necessity to pay*, unless it is to release his or her person or property from detention or to prevent an immediate seizure of his or her person or property." *Genesis Ins. Co. v. Wausau Ins. Cos.*, 343 F.3d 739 (5th Cir. 2003) (citing 66 Am. Jur. 2d § 109) (emphasis in original). The Fifth Circuit has also explained that "[t]he indemnitee is entitled to use its own good judgment and effect a settlement, *provided* that when

15

proceeding to enforce the indemnit[y] agreement that it *prove* that it was liable to the plaintiff." *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 196 n.11 (5th Cir. 1995) (emphasis in original). Moreover, the Mississippi Supreme Court has held that an indemnitee cannot "consistently den[y] liability or any wrongdoing . . . in previous depositions and court proceedings" and then proceed against the indemnitor for its settlement with the third-party. *Knostman*, 783 So.2d at 699.

The Fifth Circuit's discussion in *Genesis* sets forth some of the relevant considerations in whether a payment was "voluntary." In that case, prospective reimbursees that settled with a third-party plaintiff shortly before trial—due in part to the questionable conduct of the prospective reimbursor—were not forced to pay under compulsion or obligation. *Genesis*, 343 F.3d at 739. Their settlement was the result of litigation and negotiation, which "often takes years to resolve," and the stakes were not of sufficiently "dire magnitude" to them, as the payments had no "disastrous effect to business." *Id.* at 739-40. The Court found "untenable" the position that one of the parties was "legally obligated to contribute to the settlement," as it had sought a declaration from the district court that it was not liable to the third party, and it later sought the same determination from the Fifth Circuit. *Id.* at 738 n.2.

Defendant makes much of Plaintiff's denial of liability in the *Forest City* lawsuit, predicated on Hunt's argument that Forest City's claims against Hunt were limited to express warranties in its contract with USAF, and that these

16

warranties had expired before the lawsuit was filed. (*See generally* Mot. Dismiss by Def. Hunt Bldg. Co., Ltd., & Supp. Mem. Law, ECF No. 38-3). Defendant also points to language in the settlement agreement whereby Hunt "denied, and continues to deny responsibility for the Dispute and the allegations in the Lawsuit" and entered into settlement "without . . . admitting any liability." (Settlement Agmt. & Release, 1, ECF No. 42). Under these circumstances, the Court agrees that the voluntary payment doctrine *could* apply to preclude recovery, "if the requirements for applying the doctrine were met." *Itron, Inc. v. Johnston*, No. 3:15CV330-TSL-RHW, 2017 WL 391822, at *6 (S.D. Miss. Jan. 26, 2017). "Nevertheless, the court is unable to conclude that summary judgment is proper on the basis of the voluntary payment doctrine." *Id.* at *6-7 (noting the Fifth Circuit's statement in *Genesis* that compulsion is a factual determination, considering the stakes and dire magnitude of a possible judgment against the plaintiff). *Itron* also cited a Fifth Circuit case in which payment was not voluntary when made in "'a hotly contested litigation.'" *Id.* at 7-8 (quoting *Liberty Mut. Ins. Co. v. Holloway*, 556 F. App'x 299, 305 (5th Cir. 2014)).

      The Court cannot say on the record before it that judgment is warranted as a matter of law based on the voluntary payment doctrine. In the light most favorable to Plaintiff, Hunt was left in the *Forest City* litigation after two codefendants were dismissed, based on the state court's finding that they were not parties to Hunt's contract with USAF.

17

**IT IS THEREFORE ORDERED AND ADJUDGED** that [38] Motion for Summary Judgment filed by Defendant, Heil Builders, Inc. d/b/a Modu-Tech is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 23rd day of November, 2020.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE